UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SILVIA ORTEGA RICO, and ) | | |
| EDUARDO CARDENAS JR., ) | | |
| ) | | |
| Plaintiffs, ) | | |
| ) | | |
| vs. ) | | 08 C 2763 |
| ) | | |
| CITY OF CHICAGO, a municipal ) | | |
| corporation. and ROBERT GALLEGOS, ) | | |
| individually, and as Agent of CITY OF ) | | |
| CHICAGO, a municipal corporation, ) | | |
| ) | | |
| Defendants. ) | | |

## **MEMORANDUM OPINION**

CHARLES P. KOCORAS, District Judge:

This case comes before the court on the motion of Defendant City of Chicago ("the City") for summary judgment pursuant to Fed. R. Civ. P. 56. For the reasons set forth below, the motion is granted.

### **BACKGROUND**

On May 23, 2007, Defendant Robert Gallegos ("Gallegos") was at his home in Chicago, Illinois, enjoying his day off. On the date in question, Gallegos was employed as an officer with the Chicago Police Department and was assigned to the Mass Transit Unit. Gallegos had worked on the Mass Transit Unit for the previous five or six years;

his primary duties consisted of securing CTA platforms, riding trains and buses, and issuing citations when necessary.

Around 1:30 p.m. on May 23, 2007, Gallegos' son, Robert Gallegos, Jr. ("Bobby"), returned home from school. Bobby told his father that he had been in trouble at school that day. Bobby stated he had been in a fight with a classmate of his, Eduardo Cardenas ("Cardenas"). Bobby told his father that the altercation started after Cardenas called Bobby's mother a whore and Gallegos a pig cop. Bobby also stated that Cardenas had previously represented to him (i.e., displayed gang signs) while Bobby was at school.

Shortly after relating the news of the fight to his father, Bobby looked out the front window and spotted Cardenas walking with two friends on the sidewalk in front of the Gallegos's house. Gallegos exited his home to confront Cardenas to discuss the fight with Bobby and to find out why Cardenas was in front of his house. At the time he left his house, Gallegos was wearing his police star on a chain around his neck. After Gallegos exited his house, he observed Cardenas and his friends turn and begin walking down the adjacent alley. Gallegos stated that Cardenas was not doing anything illegal at the time of this encounter.

Gallegos followed the group down the alley and called out to Cardenas, who was 30-50 feet in front of him. Gallegos called "Eduardo!" twice, after which Cardenas

stopped, turned around, and walked toward Gallegos. As Cardenas approached, Gallegos identified himself by stating, "I'm Robert's father, the cop." Gallegos then began questioning Cardenas about the incident with Bobby at school. Gallegos began "talking trash" to Cardenas, yelling at him, and told Cardenas that he had the power to place him under arrest. Their verbal altercation then escalated into a physical one; Gallegos choked Cardenas and punched him in the jaw, fracturing his jawbone in the process. After Gallegos punched and choked Cardenas, he told Cardenas to remain in the alley while he called Bobby to resolve the problem the boys had at school earlier in the day. When Bobby came into the alley, Cardenas walked away without discussing the matter further. Gallegos did not place Cardenas under arrest after this encounter. Nor did he call the police, fill out any police reports about the incident, question Cardenas about his gang activity or involvement, or even mention anything about Cardenas' alleged gang affiliation.

On May 26, 2007, Gallegos was arrested for felony aggravated battery for his actions during his encounter with Cardenas on May 23, 2007. After a bench trial in the Circuit Court of Cook County, Gallegos was convicted of felony aggravated battery and official misconduct on March 20, 2009. On June 8, 2009, the judge sentenced Gallegos to 30 months probation, 100 hours of community service, and 45 days of house arrest.

Cardenas and his mother, Silvia Ortega Rico, (collectively, "Plaintiffs") filed suit against Gallegos and the City on May 13, 2008, nearly a year before Gallegos criminal trial, conviction, and sentencing. Plaintiffs asserted claims for use of excessive force under 42 U.S.C. § 1983, battery, and for recovery of medical expenses under the Family Expense Act, 750 ILCS § 65/15. The City now moves for summary judgment.

## LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists when the evidence is such that a reasonable jury could find for the nonmovant. *Buscaglia v. United States*, 25 F.3d 530, 534 (7th Cir. 1994). The movant in a motion for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact by specific citation to the record; if the party succeeds in doing so, the burden shifts to the nonmovant to set forth specific facts showing that there is a genuine issue of fact for trial. Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In considering motions for summary judgment, a court construes all facts and draws all inferences from the record in favor of the nonmoving party. *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 255 (1986). With these principles in mind, we turn to the City's motion.

## DISCUSSION

The City contends that summary judgment is appropriate because there are no genuine issues of fact as to whether Gallegos acted within the scope of his employment in his encounter with Cardenas.[1] We look to Illinois law to determine whether Gallegos' conduct falls within the scope of his employment. *See Copeland v. County of Macon*, 403 F.3d 929, 932 (7th Cir. 2005) (applying Illinois law in indemnification action); *Doe v. City of Chicago*, 360 F.3d 667, 670-71 (7th Cir. 2004) (applying Illinois law in assessing City's liability under *respondeat superior* for tortious misconduct of its employee). "Illinois courts look to the Second Restatement of Agency . . . for guidance in determining whether an employee's acts are within the scope of employment." *Adames v. Sheahan*, 909 N.E.2d 742, 755 (Ill. 2009). The Restatement provides:

> (1) Conduct of a servant is within the scope of employment if, but only if:
>     (a) it is of the kind he is employed to perform;
>     (b) it occurs substantially within the authorized time and space limits;
>     (c) it is actuated, at least in part, by a purpose to serve the master[.]

---

[1] The scope of employment issue is relevant in two respects. First, Plaintiffs seek to impose liability against the City for their claims under Illinois law pursuant to the doctrine of *respondeat superior*. *See Sunseri v. Puccia*, 422 N.E.2d 925, 930 (Ill. 1981). Second, Plaintiffs also want the City to satisfy any judgment they obtain against Gallegos under 42 U.S.C. § 1983 through the Local Governmental and Governmental Employees Tort Immunity Act, 745 ILCS § 10/9-102, which requires local governmental entities to pay tort judgments arising out of actions taken by its employee in the scope of his employment.

Restatement (Second) of Agency § 228 (1958). All three criteria of section 228 must be satisfied in order to conclude that an employee was acting within the scope of his employment. *Bagent v. Blessing Care Corp.*, 862 N.E.2d 985, 992 (Ill. 2007). Though summary judgment is generally inappropriate when scope of employment is at issue, it may be awarded when "no reasonable person could conclude from the evidence that an employee was acting within the course of employment[.]" *Pyne v. Witmer*, 543 N.E.2d 1304, 1308 (Ill. 1989).

The City argues that summary judgment may be awarded in this case because no reasonable juror could find that Gallegos was motivated by a purpose to serve his employer in confronting Cardenas. An employee's act "is not within the scope of employment if it is done with no intention to perform it as part of or incident to a service on account of which he or she is employed." *Bagent*, 862 N.E.2d at 995; *see also* Restatement (Second) of Agency § 235. Put another way, actions done purely in the employee's own interest are not performed within the scope of his employment. *Wright v. City of Danville*, 675 N.E.2d 110, 118 (Ill. 1996). In this case, the undisputed facts demonstrate that Gallegos confronted Cardenas for reasons entirely independent of his employment with the Chicago Police Department. Gallegos caught sight of Cardenas in front of his home immediately after his son Bobby told him of the fight that occurred earlier at school. Upon seeing his son's alleged assailant, Gallegos went

outside to confront Cardenas about the incident and to find out why he was in front of his house. Gallegos pursued Cardenas solely as a concerned father. He acted out of a desire to sort out the earlier incident involving his son and also to ascertain whether Cardenas posed a threat to Gallegos's own family or property. Gallegos confronted Cardenas out of concern for his own personal interests; his responsibilities to the public as a police officer did not factor into his motivations. We find no evidence that would permit a reasonable juror to conclude that Gallegos acted with the intent to serve his employer during his altercation with Cardenas.

Plaintiffs respond that the City is collaterally estopped from litigating the scope of employment issue because Cook County Circuit Court judge already determined the issue in finding Gallegos guilty of official misconduct. A government employee engages in official misconduct when the employee knowingly performs an act he knows to be prohibited by law and the act is done in the public employee's official capacity. 720 ILCS § 5/33-3. Plaintiffs mistakenly assume that actions done in one's official capacity also fall within the scope of that person's employment. *See Wright*, 675 N.E.2d at 117-19 (holding that officials convicted of official misconduct not entitled to indemnification because actions at issue were not performed within scope of employment). Collateral estoppel does not apply in this case because Cook County

Circuit Court did not find that Gallegos acted within the scope of his employment in convicting him of official misconduct.

## CONCLUSION

The City's motion for summary judgment is granted.

	*Charles P. Kocoras*
	Charles P. Kocoras
	United States District Judge

Dated:   December 22, 2010